[No. 65339-9. En Banc.]
Argued October 29, 1997.     Decided December 24, 1997.
EDWARD L. DEATHERAGE, PH.D., *Respondent,* v. EXAMINING BOARD OF PSYCHOLOGY, *Petitioner.*

132

*Christine O. Gregoire, Attorney General,* and *Jerald R. Anderson, Assistant,* for petitioner.

*Richard W. Kochansky,* for respondent.

JOHNSON, J. — The question presented is whether an expert witness is absolutely immune from the disciplinary action of a state licensing board when the board initiates the proceeding based upon work performed as an expert witness in child custody cases. We reverse the Court of Appeals and hold absolute witness immunity does not extend to professional disciplinary proceedings.

## FACTS

The State of Washington, Examining Board of Psychology (Board) brought disciplinary proceedings against Edward Deatherage alleging Deatherage failed to meet professional ethical standards in work that formed the basis of his expert testimony in several child custody suits. The

Board found Deatherage's failure to qualify statements, his mischaracterization of statements, his failure to verify information, and his interpretation of test data were adequate grounds for initiating disciplinary proceedings under RCW 18.83.120(4), RCW 18.83.120(13), and RCW 18.83.130(5), (6).[1] His conduct was also found to violate regulations of the Board: WAC 308-122-600; WAC 308-122-610(6); WAC 308-122-630(3); and WAC 308-122-680(5).[2] After an extensive hearing, the Board found Deatherage had committed misconduct in three custody evaluations, and suspended his license for 10 years.[3]

Deatherage filed a petition in the Spokane County Superior Court seeking judicial review of the Board's decision to suspend his license. The superior court upheld the 10-year suspension of Deatherage's professional license, found Deatherage did not have absolute immunity, and could be subjected to a disciplinary proceeding. The Court of Appeals reversed the superior court, found absolute immunity was a bar to introduction of evidence of professional misconduct, but held Deatherage would have lost his license for 10 years based on the other conduct and, therefore, upheld the 10-year license revocation. *Deatherage v. Examining Bd. of Psychology*, 85 Wn. App. 434, 450, 932 P.2d 1267 (1997).

We reverse the Court of Appeals on the single issue of witness immunity and hold such immunity cannot be raised

---

[1]RCW 18.83.120(4), RCW 18.83.120(13), and RCW 18.83.130(5), (6) were repealed in 1987. Laws of 1987, ch. 150, § 56. The language of these former statutes can now be found at RCW 18.83.121 and RCW 18.130.180. The disciplinary violations in this case took place in 1986.

[2]Recodified as WAC 246-924-350, WAC 246-924-360, WAC 246-924-380, and WAC 246-924-430, effective Feb. 28, 1991, *repealed by* 93-07-036 (Order 337B), effective Apr. 10, 1993.

[3]Although unrelated to the specific question before the court, it is important to note Deatherage was brought before the Board for other unprofessional conduct. Based upon that conduct, and independent of the issue before us, the Board suspended his license to practice psychology for 10 years. Deatherage's cross-petition on that issue was denied.

as a defense to a state licensing board's initiation of a professional disciplinary proceeding.

## ANALYSIS

■ The State argues the Court of Appeals misapplied the law of expert witness immunity when it extended the doctrine to include immunity from a state licensing board proceeding. This is a legal question; therefore, the standard of review is de novo. *Barr v. Day*, 124 Wn.2d 318, 324, 879 P.2d 912 (1994).

In this case, the State subjected Deatherage to a professional disciplinary proceeding for Deatherage's alleged negligent rendering of professional opinion in child custody cases. Deatherage has raised the defense of absolute witness immunity which he argues prevents the Board from initiating disciplinary proceedings against him based upon his work and conduct as an expert witness testifying in a court proceeding.

The defense of absolute privilege generally applies to statements made in the course of judicial proceedings and acts as a bar to any civil liability. *Twelker v. Shannon & Wilson, Inc.*, 88 Wn.2d 473, 475, 564 P.2d 1131 (1977). The absolute privilege of witness immunity is well stated by the RESTATEMENT (SECOND) OF TORTS § 588 (1977):

> A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding.

The comments to the Restatement emphasize that the privilege does not provide blanket immunity to all statements, and the comments limit the scope of the privilege to statements that have some relation to the proceeding or to a party to the proceeding.

This court's early application of the privilege was consistent with the Restatement. In *Twelker*, the defendant raised the defense of absolute immunity in an attempt to

bar a lawsuit based upon statements in an engineering report made by a prospective witness prior to the initiation of the lawsuit. *Twelker*, 88 Wn.2d at 474-75. The appellant contended false statements regarding the content of his original soil report were made, and that these statements defamed his professional reputation. *Twelker*, 88 Wn.2d at 475. We held absolute immunity could not be extended to include such statements. *Twelker*, 88 Wn.2d at 478.

■ The privilege of immunity is a judicially created privilege founded upon the belief that the administration of justice requires witnesses in a legal proceeding be able to discuss their views without fear of a defamation lawsuit. *Twelker*, 88 Wn.2d at 476. Absolute immunity was originally confined to judges, lawyers, legislatures in debate, and executive and military personnel when within the scope of the duties of their offices. *Twelker*, 88 Wn.2d at 476. The scope of absolute privilege has been limited to situations where some power to discipline remains available and to situations where the testimony could be stricken to eliminate statements that exceeded the bounds of permissible conduct. *Twelker*, 88 Wn.2d at 476. The privilege of absolute witness immunity creates an "extraordinary breadth" of protection and should not be extended absent the existence of compelling public policy justifications. *Twelker*, 88 Wn.2d at 478.

In 1989, the privilege was extended, and we held an expert witness cannot be found civilly liable for any action done as part of a judicial function. *Bruce v. Byrne-Stevens & Assocs. Eng'rs, Inc.*, 113 Wn.2d 123, 125, 776 P.2d 666 (1989). Until *Bruce,* the privilege of witness immunity was not a shield to be raised against potential civil liability for professional negligence. We must now determine whether the reasoning of *Bruce* applies to the present case.

Witness immunity rests on the fact that an individual is a participant in a judicial proceeding. The rule is provided as an "encouragement to make a full disclosure of all pertinent information within their knowledge." 2 FOWLER V. HARPER ET AL., THE LAW OF TORTS § 5.22, at 187 (2d ed. 1986).

Immunity was extended beyond eyewitnesses to include expert witnesses because courts realized that forcing an expert witness to face retaliatory lawsuits by those who disagree with the expert's opinion may cause an expert to be reluctant to appear in litigation. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 114, at 816-17 (5th ed. 1984). We extended this logic and decided because an expert assists the finder of fact in a matter that is often beyond its capabilities, an expert cannot be sued civilly when participating in a judicial proceeding. *Bruce*, 113 Wn.2d at 130.

*Bruce* involved an engineer who, as an expert, testified it would cost $10,020 to stabilize the soil on the plaintiff's property. *Bruce*, 113 Wn.2d at 124. The trial court found in the plaintiff's favor and awarded the plaintiff a judgment for exactly that amount. *Bruce,* 113 Wn.2d at 124. The actual cost of the repair was twice the amount the expert witness testified to at trial. *Bruce*, 113 Wn.2d at 125. The plaintiff attempted to sue the expert witness in negligence. The plaintiff contended but for the expert witness' negligent analysis and testimony they would have been awarded the true cost of repair. *Bruce*, 113 Wn.2d at 125. We did not agree, and held absolute witness immunity barred the suit. *Bruce*, 113 Wn.2d at 138.

In reaching this result, the plurality in *Bruce* stated as a general rule witnesses in judicial proceedings are absolutely immune from civil liability based on their testimony. *Bruce*, 113 Wn.2d at 125 (citing *Briscoe v. LaHue*, 460 U.S. 325, 330-331, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983)). The plurality's application of the immunity rule extended the traditional rule, but the plurality's justification for granting absolute immunity to expert witnesses was supported by valid public policy considerations—the most important of which was "to preserve the integrity of the judicial process by encouraging full and frank testimony." *Bruce*, 113 Wn.2d at 126.

The primary argument against providing immunity to expert witnesses is the threat of liability encourages

prudence in testimony. *Bruce*, 113 Wn.2d at 131. We explored the argument and weighed the benefit of testimony subject to liability against the threatened loss of objectivity. We concluded civil liability for expert witnesses was "too blunt an instrument" to gain much reliability in testimony because liability would result in testimony motivated by litigants' interests and not professional standards. *Bruce*, 113 Wn.2d at 131.

Ultimately, we were concerned if immunity were lifted, a witness could testify in a manner which would prevent the potential lawsuit, but would deprive the court of the benefit of candid, unbiased testimony. *Bruce*, 113 Wn.2d at 126. We felt the benefits gained by extending witness immunity were counterbalanced by safeguards inherent in the judicial system. We noted witness reliability is ensured by oath, cross-examination, and the threat of criminal prosecution for perjury. *Bruce*, 113 Wn.2d at 126; *Briscoe*, 460 U.S. at 332. We found these safeguards ensured truthful and accurate testimony.

Deatherage argues the reports he submitted to the court should not be used in a disciplinary proceeding because, under the holding in *Bruce*, the scope of absolute witness immunity is broad and provides protection from this type of liability. However, a disciplinary proceeding is not a civil suit against the expert, and the policies that underscore witness immunity do not apply. Disciplinary actions are different in character from civil actions. A treatise on legal malpractice clearly explains the distinction:

> There are several significant differences between a civil malpractice action and a disciplinary proceeding. First, a lawyer may be disciplined even if the misconduct does not cause any damage. The rationale is the need for protection of the public and the integrity of the profession. Second, although the severity of the breach may affect the nature of the discipline, the prophylactic purpose of the ethical rules may result in a sanction even if the conduct would not otherwise constitute a civil wrong. Third, even if the injured party initiates a disciplinary complaint, that individual is not a party to the proceedings.

1 RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE § 1.9, at 33 (3d ed. 1989) (footnotes omitted). When we acknowledge these differences, it follows that a rule providing immunity from civil liability does not necessarily provide protection from professional discipline. Just as a rule promulgated for professional discipline is inappropriate as a legal doctrine, a legal doctrine promulgated to achieve the full disclosure of facts may not provide immunity from a professional disciplinary proceeding. *Id.*

■ ■ Once we accept that a disciplinary action is a distinct proceeding, we must determine whether the Board has the authority to initiate professional discipline based upon testimony presented in a judicial proceeding. The discipline of health care professionals is governed by RCW Chapter 18.130, the Uniform Disciplinary Act. Under RCW 18.130.180(1), "[t]he commission of any act involving moral turpitude, dishonesty, or corruption relating to the practice of the person's profession" constitutes unprofessional conduct. To serve as grounds for professional discipline under RCW 18.130.180(1), conduct must be "related to" the practice of the profession. We have construed the "related to" requirement as meaning that the conduct must indicate unfitness to bear the responsibilities of, and to enjoy the privileges of, the profession. *Haley v. Medical Disciplinary Bd.*, 117 Wn.2d 720, 731, 818 P.2d 1062 (1991). This construction encompasses a wide variety of conduct, but the broad sweep serves a valuable purpose. A medical disciplinary proceeding, we explained, is taken for two purposes: to protect the public, and to protect the standing of the medical profession in the eyes of the public. *In re Kindschi*, 52 Wn.2d 8, 11, 319 P.2d 824 (1958).

■ With the purpose of the Uniform Disciplinary Act in mind, conduct may indicate unfitness to practice within a health care profession if it raises reasonable concerns that the individual may abuse the status of being a medical professional in a manner that harms members of the public and lowers the standard of the medical profession in the public's eye. *Haley*, 117 Wn.2d at 733. The language and

purpose of RCW Chapter 18.130 authorizes the initiation of a disciplinary proceeding based upon unprofessional conduct as an expert witness.

Case law from other jurisdictions supports the conclusion that while civil liability is not available, professional discipline may be appropriate. *See Imbler v. Pachtman*, 424 U.S. 409, 429, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976) (immunity of prosecutor from liability does not exempt his amenability to professional discipline); *Moses v. Parwatikar*, 813 F.2d 891, 893 (8th Cir. 1987) (absolute immunity for psychiatrist bars a suit for monetary damages, but does not prohibit other corrective action); *Silberg v. Anderson*, 50 Cal. 3d 205, 218-19, 786 P.2d 365, 266 Cal. Rptr. 638 (1990) (absolute immunity for attorney does not prohibit professional discipline); *Moses v. McWilliams*, 379 Pa. Super. 150, 157 n.7, 549 A.2d 950 (1988) (absolute immunity for physician does not prohibit professional discipline). These courts have found the threat of professional discipline is an appropriate check on individuals who are otherwise immune from civil liability. We agree.

Permitting a professional to be subjected to discipline for unprofessional conduct is consistent with *Bruce*, serves to advance the court's goal of accurate testimony from expert witnesses, and furthers the disciplinary board's goal of protecting the public. As the plurality in *Bruce* stated, the reason for immunity is that the court wants "to preserve and enhance the judicial process." *Bruce*, 113 Wn.2d at 128. However, eliminating any threat of punishment (except criminal perjury charges) extends absolute immunity beyond its historical reach. Initiating a professional disciplinary action based upon expert witness testimony is consistent with the purpose of the doctrine of absolute immunity as stated by this court:

> Absolute immunity, it seems, should be confined to cases where there is supervision and control by other authorities, such as courts of justice, where proceedings are under the able and controlling influence of a learned judge, who may reprimand, fine and punish as well as expunge from records state-

ments of those who exceed proper bounds, and who may themselves be disciplined when necessary. The same is true in federal and state legislatures, and their committees, where the decorum is under the watchful eye of presiding officers, and records may be stricken and the offending member punished . . . . *Underlying the doctrine of absolute immunity is the concept of an alternate if not adequate remedy* . . . .

*Twelker*, 88 Wn.2d at 476-77 (emphasis added) (quoting *Mills v. Denny*, 245 Iowa 584, 588-89, 63 N.W.2d 222, 40 A.L.R.2D 933 (1954)).

Witness immunity is traditionally available in defamation cases and other related tort actions. However, the privilege is not so broad as to extend to a professional disciplinary proceeding. We reverse the Court of Appeals and hold absolute witness immunity does not exist in the context of a professional disciplinary proceeding.

DOLLIVER, SMITH, GUY, MADSEN, ALEXANDER, TALMADGE, and SANDERS, JJ., concur.