[No. 27542-2-II.   Division Two.   October 2, 2002.]

MARGRETT GUSTAFSON, *Individually and as Guardian, Appellant*, v. IRENE MAZER, *Respondent.*

---

[22] ER 803(a)(2).

*John R. Connelly, Jr.* and *Lafcadio H. Darling* (of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, P.L.L.C.*), for appellant.

*A. Clarke Johnson, Jr.* and *Cheryl A. Comer* (of *Johnson, Graffe, Keay & Moniz*), for respondent.

BRIDGEWATER, J. — Margrett Gustafson appeals a superior court order granting summary judgment dismissal in favor of Dr. Irene Mazer. Gustafson sued Dr. Mazer, a clinical psychologist, for her role in Gustafson's custody dispute with her former husband, Michael Baker. We hold that Dr. Mazer was entitled to witness immunity for her report to the guardian ad litem in the child custody dispute, wherein she detailed her suspicion that Gustafson suffered from Munchausen syndrome by proxy (MSBP).[1] We hold Dr. Mazer immune for her report because she prepared it in connection with her possible testimony. We affirm.

In September 1996, Gustafson and Michael Baker engaged in a custody dispute over their daughter, Maddison. Carolyn Elsey, Maddison's guardian ad litem, determined that psychological evaluations of Gustafson, Baker, and Maddison would help her recommend a primary residential parent for Maddison. On Elsey's recommendation, Gustafson and Baker hired Dr. Mazer to conduct the evaluations. (Dr. Mazer worked with Peterson, Whitehill & Mazer, Inc. P.S.)

Dr. Mazer's role "was to administer psychological tests, and conduct interviews, and report her findings from those tests and interviews" to Elsey. Clerk's Papers (CP) at 451.

---

[1] MSBP is "a form of child maltreatment or abuse inflicted by a caretaker (usually the mother) with fabrications of symptoms and/or induction of signs of disease, leading to unnecessary investigations and interventions, with occasional serious health consequences, including death of the child." STEADMAN'S MEDICAL DICTIONARY 1736 (26th ed. 1995).

The superior court was unaware of Dr. Mazer's connection to the custody proceeding.

Elsey told Dr. Mazer that she believed that Gustafson had caused illnesses in Maddison in order to maintain the position of an excellent caregiver. Similarly, Baker alleged that Gustafson subjected Maddison to unnecessary medical treatments, including an impending surgery for esophageal reflux. During their October 1996 interview, Gustafson told Dr. Mazer that Baker had accused her of "making Maddison sick" and having MSBP. CP at 11. Dr. Mazer had no previous experience with MSBP.

Thereafter, Dr. Mazer reviewed some of Maddison's medical records, which revealed that Maddison saw 12 different doctors between April 1994 and November 1996. Next, Dr. Mazer researched MSBP on the internet, read several articles on the subject, and conferred with several experts via telephone and e-mail. Notably, Dr. Mazer received two e-mails from MSBP experts, warning her that if she lacked appropriate training and experience, she should receive adequate information and consultation before diagnosing MSBP. Based on the information from Elsey, Baker, Gustafson, Maddison's medical records, and her research, Dr. Mazer "believed that there was reasonable cause to suspect that [Gustafson] suffered from MSBP." CP at 11.

At Elsey's request, Dr. Mazer prepared a memorandum detailing the basis of her "strong suspicion" that Gustafson suffered from MSBP. CP at 21. Days later, on November 12, 1996, Elsey brought an ex parte motion before a superior court commissioner seeking a custody transfer. To support her motion, Elsey attached Dr. Mazer's memorandum and her own declaration. Dr. Mazer had prepared the memorandum for the emergency custody hearing.

Also on November 12, the commissioner granted Elsey's motion and transferred custody of Maddison to Baker. That same day, the Spokane Police Department removed Maddison from Gustafson's custody.

On November 15, 1996, Dr. Mazer testified in support of her memorandum at an emergency hearing to vacate the

order transferring custody. The motion was denied. On December 2, 1996, however, a superior court judge restored custody of Maddison to Gustafson.

In June 1997, Dr. Mazer submitted a psychological report on Gustafson and Baker, concluding that her allegations of MSBP were unsubstantiated. In June 1998, Dr. Mazer testified at a custody hearing about her evaluations of Gustafson and Baker. The following excerpt from Dr. Mazer's testimony is instructive:

Q: Did you prepare [the November memorandum] at the request of Ms. Elsey?

A: Yes.

Q: And that report was prepared for the purpose of [the ex parte] hearing on November 12th?

A: Yes.

Q: It was your understanding that the purpose of that hearing was to obtain an order to remove Maddison from [Gustafson's] care?

A: That's correct.

CP at 169.

Gustafson sued Dr. Mazer and Peterson, Whitehill & Mazer, Inc. P.S., for defamation and negligence in November 1999. Dr. Mazer moved for summary judgment in April 2001. The superior court granted summary judgment based on witness immunity; it held Dr. Mazer immune under *Bruce v. Byrne-Stevens & Associates Engineers*, 113 Wn.2d 123, 776 P.2d 666 (1989).

## I. Standard of Review

We review summary judgment de novo, engaging in the same inquiry as the trial court, *International Brotherhood of Electrical Workers, Local Union No. 46 v. TRIG Electric Construction Co.*, 142 Wn.2d 431, 434-35, 13 P.3d 622 (2000), *cert. denied*, 532 U.S. 1002 (2001), and we consider all facts and all reasonable inferences from them in the light most favorable to the nonmoving party, *Wilson v.*

*Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if there is no issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Furthermore, when the moving party is the defendant, as in this case, and she meets her initial burden of showing the absence of an issue of material fact, the burden shifts to the nonmoving party to make a showing sufficient to establish the existence of an element essential to that party's case. *Young v. Key Pharms.*, 112 Wn.2d 216, 225-26, 770 P.2d 182 (1989).

## II. Witness Immunity

The parties disagree about whether witness immunity applies to Dr. Mazer. Generally, witness immunity is an absolute privilege. *See Deatherage v. Examining Bd. of Psychology*, 134 Wn.2d 131, 135, 948 P.2d 828 (1997). In other words, "[a]ll witnesses are immune from all claims arising out of all testimony." *Dexter v. Spokane County Health Dist.*, 76 Wn. App. 372, 376, 884 P.2d 1353 (1994). Witness immunity promotes full and frank testimony, which, in turn, protects the integrity of the judicial process. *Bruce*, 113 Wn.2d at 126.

*Bruce v. Byrne-Stevens & Associates Engineers* extended the immunity of expert witnesses to include not only their testimony, "but also . . . acts and communications which occur in connection with the preparation of that testimony." *Bruce*, 113 Wn.2d at 136. There, landowners hired an engineering firm to estimate repair costs caused by a neighbor's excavation. The engineer estimated the repair costs, testified to it, and the landowners won judgments for those amounts. Later, when the estimates proved too low, the landowners sued the engineer for malpractice. Our Supreme Court held the engineer immune from suit for both his testimony and his work in preparing the testimony. *Bruce*, 113 Wn.2d at 136.

The Supreme Court rejected the plaintiffs' argument that they were suing for negligent engineering, not for negligent

testifying; it reasoned that the plaintiffs complained of "an inadequate recovery in litigation," not that the defendant's engineering work "would not enable a contractor to restore their land." *Bruce*, 113 Wn.2d at 134. In addition, the court based its decision on policy:

> Witness immunity must extend to the basis of the witness' testimony, or the policies underlying such immunity would be undermined. An expert's courtroom testimony is the last act in a long, complex process of evaluation and consultation with the litigant. There is no way to distinguish the testimony from the acts and communications on which it is based. Unless the whole, integral enterprise falls within the scope of immunity, the chilling effect of threatened litigation will [lead to less objective expert testimony and discourage anyone who is not a full time professional expert witness from testifying], regardless of the immunity shielding the courtroom testimony.

*Bruce*, 113 Wn.2d at 135.

Gustafson makes several arguments against applying witness immunity here. First, she asserts that her claim is not based on Dr. Mazer's testimony but, rather, on "Dr. Mazer's negligently premature and uninformed allegation of MSBP[.]" Br. of Appellant at 9. Gustafson concludes that since her claim is unrelated to Dr. Mazer's testimony or preparation, therefore, witness immunity is not required by *Bruce*.

Dr. Mazer's memorandum, however, was part of the long, complex evaluation process that culminated in her testimony at the custody hearings and trial. *See Bruce*, 113 Wn.2d at 135. Likewise, Dr. Mazer based her memorandum on the psychological evaluations she performed, prepared the memorandum at Elsey's request for use in a court proceeding, testified days later about the memorandum, and eventually testified at the custody trial.

Gustafson and Baker, parties to the ongoing child custody dispute, retained Dr. Mazer to engage in neutral fact finding, conduct psychological evaluations, and report back to the guardian ad litem, Elsey. Accordingly, Dr. Mazer had no role as a psychologist independent of her participation in

the litigation, and she had no professional relationship with Gustafson. Rather, Dr. Mazer assisted Elsey in serving as guardian ad litem and performed functions similar to a court-appointed expert.

Moreover, Dr. Mazer did not become involved until after the custody dispute began. Thereafter, what she did *was* related to the dispute. For example, the record shows that Dr. Mazer prepared the memorandum, at Elsey's request, specifically for the ex parte hearing.

Furthermore, Gustafson knew that Dr. Mazer might share the details of her interview with the court and the opposing side. Similarly, Gustafson must have known that Elsey would share Dr. Mazer's conclusions with the court. Thus, it was likely that Dr. Mazer would be called on to testify regarding her conclusions—especially a suspicion as damning as Dr. Mazer's belief that Gustafson suffered from MSBP since it would factor so heavily in a custody dispute. Finally, Dr. Mazer's suspicion that Gustafson suffered from MSBP is directly related to her ultimate opinion as to which of the parties, Gustafson or Baker, should receive custody of Maddison, the very reason the parties retained Dr. Mazer.

Next, Gustafson contends that witness immunity is not proper because Elsey did not "intend" for Dr. Mazer to serve as an expert witness but merely an "evaluator." Br. of Appellant at 2, 9. Specifically, she relies on the following from Elsey's deposition: "I had always viewed [Dr. Mazer's] involvement as doing psychological evaluations. And when Munchausen came up, I didn't view her role as changing to . . . an expert witness as to Munchausen or psychology." CP at 451. Dr. Mazer, however, contends that witness immunity should extend to her, as either a potential or a retained expert witness (*see Bruce*, 113 Wn.2d at 129) because (1) Gustafson and Baker hired Dr. Mazer to advise Elsey and the court regarding the custody determination, (2) it was expected that Dr. Mazer would testify in some form, (3) Dr. Mazer did testify, and (4) her role was integral to the court's custody determination. Furthermore, Dr. Mazer points out that Gustafson previously acknowledged

that Dr. Mazer served in an expert capacity: "[Ms. Elsey's] final report and her final deposition pertaining to that report show that she refused to believe any experts involved in this matter, including her own psychologist [Dr. Mazer], because they did not fit her belief." CP at 228.

Dr. Mazer is correct. Despite Elsey's alleged intentions, Dr. Mazer used her professional expertise to perform the evaluations and conclude that Gustafson may suffer from MSBP. In short, Dr. Mazer's published "suspicion" was her "expert" opinion.

Gustafson also points out that witness immunity rests, in part, on the safeguards against false or inaccurate testimony: "A witness' reliability is ensured by his oath, the hazard of cross examination and the threat of prosecution for perjury."[2] Gustafson claims that these safeguards are missing here because Dr. Mazer (1) was not under oath when she made the allegedly negligent statements (i.e., the MSBP suspicion in Dr. Mazer's memorandum), (2) her statements were not subject to cross-examination, and (3) she never faced the threat of perjury. Nevertheless, this argument is unpersuasive.

Gustafson does not claim that Dr. Mazer lied; rather, she claims that Dr. Mazer was negligent in diagnosing her with MSBP. But the witness's oath and threat of perjury do not protect against negligence. Similarly, it was within the superior court commissioner's discretion to act on Dr. Mazer's memorandum when Elsey brought the ex parte motion, before Gustafson's attorney had an opportunity to cross-examine Dr. Mazer. Furthermore, Dr. Mazer testified at the emergency hearing just days after the superior court commissioner granted Elsey's ex parte motion. Thus, Gustafson's attorney was able to cross-examine Dr. Mazer about her memorandum. Finally, Gustafson challenged the custody transfer in superior court, where a judge restored

---

[2] *Bruce*, 113 Wn.2d at 126; *see also Twelker v. Shannon & Wilson, Inc.*, 88 Wn.2d 473, 475-76, 564 P.2d 1131 (1977) (" 'The witness is subject to the control of the trial judge in the exercise of the privilege. For abuse of it, he may be subject to criminal prosecution for perjury and to punishment for contempt.' " (quoting RESTATEMENT OF TORTS § 588 cmt. a (1938))).

custody of Maddison to Gustafson. In sum, adequate safeguards were present.

Lastly, Gustafson argues against applying witness immunity on policy grounds. She claims that if witness immunity covers Dr. Mazer, it would also extend to a retained consultant's statement that is unrelated to the subject of the consultation. But Gustafson wrongly assumes that Dr. Mazer's MSBP suspicion was unrelated to her involvement. To the contrary, although Dr. Mazer's suspicion was not substantiated, it had a direct bearing on her evaluation of Gustafson and recommendation to Elsey.

Under the broad immunity afforded to experts by *Bruce*, Dr. Mazer is immune from liability. The trial court did not err in granting summary judgment.

Affirmed.

HUNT, C.J., and SEINFELD, J., concur.