125 P.3d 236 (2005)
131 Wash.App. 28
Pardner WYNN, Appellant,
v.
Jolene EARIN and John Doe Earin, as Husband and Wife and Their Marital Community, Respondents.
No. 22811-8-III.
Court of Appeals of Washington, Division Three.
December 22, 2005.
*238 Mary E. Schultz, Attorney at Law, Spokane, WA, for Appellant.
James B. King, Christopher J. Kerley, Attorneys at Law, Spokane, WA, for Respondents.
SWEENEY, A.C.J.
¶ 1 Washington's Health Care Information Act prohibits disclosure of health care information without specific procedural safeguards, which include the consent of the patient. Chapter 70.02 RCW. But an expert witness has common law immunity for disclosing health care information during a trial, so long as the information was obtained in anticipation of the litigation. Here, a former patient sued his marriage guidance counselor for violating the Health Care Information Act by disclosing information in his child custody proceedings. The court concluded that the testimony was protected by witness immunity. We disagree and reverse in part.

FACTS
¶ 2 In September 1997, Pardner Wynn consulted certified mental health professional Jolene Earin for help with his marriage. She assured him of confidentiality. And Mr. Wynn divulged personal information. Ms. Earin took notes and kept records. Mr. Wynn's wife, Cynthia, also started counseling with Ms. Earin. But by May of 1998, Mr. Wynn viewed Ms. Earin as sympathetic to his wife and antagonistic to him. So he stopped seeing her. Ms. Earin continued to counsel Cynthia. The Wynns eventually became embroiled in a bitter dissolution and custody battle. The court appointed a guardian ad litem for the children.
¶ 3 Mr. Wynn suggested that the guardian ad litem talk to Ms. Earin and gave a signed, written release to the guardian to obtain his counseling records. The guardian ad litem telephoned Ms. Earin. And Ms. Earin, despite having no written release in hand, freely divulged Mr. Wynn's personal information. Ms. Earin discussed Mr. Wynn's therapy sessions without notes, based on her recollections from three years before. Mr. Wynn alleged that Ms. Earin violated multiple provisions of the Health Care Information Act *239 as well as the prevailing standard of care for mental health counselors (malpractice).
¶ 4 The guardian ad litem included Ms. Earin's information in her report to the court. Mr. Wynn read the report. He thought Ms. Earin's information was inaccurate, incomplete, and biased. He served Ms. Earin with a subpoena duces tecum to appear for deposition in 24 days and to bring records of all counseling with him and his wife, both joint and individual. Ms. Earin responded with a sworn declaration that the records were not accessible. At that time, the records were in Ms. Earin's basement. She transferred Mr. Wynn's records from her basement to her car, then left the unlocked car in her driveway. The records were then allegedly stolen and were never produced.
¶ 5 Ms. Earin testified on behalf of Cynthia Wynn at the custody hearing. She again disclosed information about Mr. Wynn. It is not clear from the record whether she was subpoenaed. But she did not notify Mr. Wynn or his counsel of the third party disclosure request. Mr. Wynn alleged that, as a witness, Ms. Earin's answers exceeded the scope of the questions.
¶ 6 Mr. Wynn sued for emotional distress caused both by Ms. Earin's alleged violations of the Health Care Information Act and by her alleged malpractice negligence. He alleged that Ms. Earin's acts constituted a "continuum" of misconduct that proximately caused his damages. He sued for actual damages and attorney fees under the Health Care Information Act, RCW 70.02.170, as well as traditional damages for professional negligence.
¶ 7 Dismissed Claims. The court granted Ms. Earin's pretrial motion for blanket immunity from any claims related to the custody proceedings. The court also dismissed Mr. Wynn's claims for Ms. Earin's filing a false declaration and failing to produce Mr. Wynn's records in response to his subpoena. The court ruled that a subpoena violation is governed by the court rules,[1] and is not a written request for records under the Act.[2] The court allowed Mr. Wynn to amend his complaint to allege that the subpoena response violated a different provision of the Health Care Information Act. The Act precludes third parties from obtaining records without compulsory process to the provider and notice to the patient. RCW 70.02.060. Before the case went to the jury, however, the court changed its mind and dismissed these claims altogether.
¶ 8 Dismissed Juror. After the jury was sworn, a juror asked to be excused. She said her belief in the importance of professional confidentiality was so strong that it was unfair to Ms. Earin for her to remain on the jury. To satisfy the court, the juror listened to the testimony of the first witness, Mr. Wynn's expert on the professional confidentiality standard of care for mental health care providers. The juror then renewed her request. The court held a conference in chambers and then made a record of excusing the juror and seating an alternate. Mr. Wynn objects to the removal of this juror.
¶ 9 Jury Instructions. When the court drafted jury instructions, it recognized that the overlapping statutory and common law claims might confuse the jury.[3] The judge was of the opinion that Mr. Wynn's case against Ms. Earin boiled down to a negligence action in which the statutory violations were evidence of the breach of duty element: "Part of the standard of care is whether or not the Defendant complied with various statutes that govern her profession." Report of Proceedings (RP) at 1142. The court concluded that the statutory claim was, then, "subsumed into the negligence claim," RP at 1131, and that separating the two sources of duty unnecessarily complicated things. RP at 1142.
*240 ¶ 10 The judge also consolidated the statutory and negligence claims on the questions of proximate cause and damages. Mr. Wynn alleges a series of bad acts and claimed those acts caused his emotional distress damages. The jury would, accordingly, determine whether each act breached a duty and contributed to the harm, and then assess damages for the entire injury.
¶ 11 Key Instructions and Special Verdicts. The court directed a verdict that Ms. Earin violated the Health Care Information Act by talking to the guardian ad litem on the phone without having Mr. Wynn's written release in front of her. The jury was asked whether this was also negligence. The jury found it was also negligence but that it was not a proximate cause of harm to Mr. Wynn.
¶ 12 The court directed a second verdict that leaving health records in an unlocked car violated the Health Care Information Act and that this was also negligence as a matter of law. The jury was asked if this was a proximate cause of Mr. Wynn's damages and answered that it was.
¶ 13 Damages. The jury awarded $2,790 for economic damages, the amount of Mr. Wynn's counseling expenses. The jury awarded zero noneconomic damages. Mr. Wynn moved for a judgment notwithstanding the verdict, asserting that these verdicts were inconsistent. The court denied the motion.
¶ 14 Fee Award. Mr. Wynn requested $119,432 in attorney fees plus $11,006 in costs, pursuant to the health care statute's remedies provision, RCW 70.02.170, based on the two directed verdicts that the statute was violated. The judge segregated the work she thought had been necessary to establish the statutory violations, estimated that this was 10 percent of the total effort, and awarded $11,900 in fees and $1,100 in costs.

DISCUSSION
¶ 15 Mr. Wynn challenges the court's grant of witness immunity and the court's interpretation of chapter 70.02 RCW. He contends the loss of these claims undermined his continuum theory of liability. He argues that Ms. Earin's acts should not be viewed singly as separate potential causes of his harm. Rather each incident was part of an ongoing and continuing course of conduct throughout his custody litigation.
¶ 16 Mr. Wynn assigns error to the dismissal of his claims based both on witness immunity and the court's statutory interpretation. He challenges the dismissal of the juror and the sufficiency of the jury instructions. He contends the court denied him statutory damages by not making its own damages determination in addition to the jury award. He also assigns error to the denial of judgment notwithstanding the verdict on noneconomic damages and the denial of full attorney fees and costs.

WITNESS IMMUNITY
¶ 17 A key component of Mr. Wynn's theory of the case (ongoing violations of the Health Care Information Act and malpractice) was the claim that Ms. Earin violated the statute and the standard of care by contacting the lawyers representing his wife and offering to testify against him in the custody proceedings. He claimed that Ms. Earin testified without a subpoena, contrary to the statute. The record includes a letter to Ms. Earin from the lawyers stating that a subpoena is enclosed. There is no suggestion, however, that Ms. Earin notified Mr. Wynn as the statute requires to enable him to seek a protection order. RCW 70.02.060(1). Mr. Wynn also claimed that Ms. Earin violated the statute by testifying beyond the scope of the questions. And Ms. Earin's own expert testified that this violated the professional confidentiality standard which requires a counselor, if subpoenaed, to respond strictly to the questions presented and to volunteer nothing.
¶ 18 The court dismissed these claims on Ms. Earin's motion based on blanket witness immunity. Mr. Wynn contends that the loss of these claims prejudiced him by gutting his "continuum theory" of the casethat is, that the conduct here was ongoing and involved multiple violations of the Health Care Information Act and ongoing negligence.
*241 ¶ 19 Mr. Wynn argues that witness immunity is broad but not absolute. It generally protects witnesses from civil liability for the substance of their testimony and trial preparation, even if erroneous or defamatory. He contends that this does not mean, however, that professionals with a duty of client confidentiality, such as lawyers and doctors, can divulge all they know about a client from the witness stand; the public interest in full disclosure by witnesses conflicts with and is outweighed by the public interest in encouraging full disclosure between clients and professionals.
¶ 20 He points out that a common law doctrine is trumped by a conflicting statute. He contends that witness immunity is a common law doctrine, and the Health Care Information Act is a conflicting statute that expressly provides for patients to sue for disclosures of health records except as provided by its terms.
¶ 21 Ms. Earin responds that witness immunity is absolute. Its purpose is to encourage full and frank disclosure in judicial proceedings. A professional should not, then, be subject to liability for violating professional standards in the course of litigation. Ms. Earin argues that the public interest in professional confidentiality is protected because witness immunity does not extend to professional disciplinary proceedings for violations of professional standards. Deatherage v. Examining Bd. of Psychology, 134 Wash.2d 131, 140, 948 P.2d 828 (1997). Ms. Earin also asserts that common law witness immunity exists independently of statute.
¶ 22 The questions presented are questions of law. And review is therefore de novo. Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998).
¶ 23 The general rule is that witnesses in judicial proceedings are "absolutely immune from suit based on their testimony." Bruce v. Byrne-Stevens & Assocs. Eng'rs, Inc., 113 Wash.2d 123, 125, 776 P.2d 666 (1989). Witnesses are immune from any civil liability for statements made in the course of judicial proceedings. Deatherage, 134 Wash.2d at 135, 948 P.2d 828. The idea is to encourage full and frank disclosure to the court. Bruce, 113 Wash.2d at 126, 776 P.2d 666. The doctrine rests on the premise that frank and full disclosure is in the public interest. Id.
¶ 24 But witness immunity does not apply to information acquired by a witness in a prelitigation confidential professional relationship that was formed for nonlitigation purposes. Gustafson v. Mazer, 113 Wash. App. 770, 776-77, 54 P.3d 743 (2002). In Gustafson, for example, parents hired a psychologist during custody proceedings and instructed the psychologist to make a report to the guardian ad litem. Id. at 773, 54 P.3d 743. Division Two of this court distinguishes this situation from that of a psychologist who advises a patient before an action is commenced and independently of the litigation. Id. at 776-77, 54 P.3d 743. Division One of this court has also recognized the distinction between a psychologist hired for litigation purposes and one who treats the plaintiff before litigation is contemplated. Childs v. Allen, 125 Wash.App. 50, 56, 105 P.3d 411 (2004), review denied, 155 Wash.2d 1005, 122 P.3d 185 (2005).
¶ 25 In the cases relied on by Ms. Earin, an expert was hired to prepare a report for litigation. For example, in Bruce an engineer consulted as an expert on damages underestimated the amount. The engineer was immune from the plaintiff's professional malpractice action. Bruce, 113 Wash.2d at 138, 776 P.2d 666. Likewise, the psychologist in Deatherage was negligent in preparing reports in his capacity as an expert in child custody proceedings. Deatherage, 134 Wash.2d at 134, 948 P.2d 828. Here, Ms. Earin acquired her information as she treated Mr. Wynn. That treatment predated the litigation and was not undertaken with any view toward litigation.
¶ 26 More importantly, statutes prevail over conflicting common law doctrines. Windust v. Dep't of Labor & Indus., 52 Wash.2d 33, 36-37, 323 P.2d 241 (1958). Witness immunity is a common law doctrine. Bruce, 113 Wash.2d at 125, 776 P.2d 666. And the courts cannot simply ignore statutes that conflict with case law. State v. Varga, 151 Wash.2d 179, 194, 86 P.3d 139 (2004) *242 (quoting Windust, 52 Wash.2d at 37, 323 P.2d 241).
¶ 27 The statutory scheme here, chapter 70.02 RCW (the Health Care Information Act), is calculated to prevent disclosure of confidential health care information as against the public interest. It expressly provides a cause of action against a health care provider who releases treatment information to a third party without compulsory process and timely notice to the patient. RCW 70.02.060(1), (2); RCW 70.02.170.
¶ 28 Ms. Earin relies on Briscoe v. LaHue. Briscoe v. LaHue, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). But Briscoe is distinguishable because there the policy of witness immunity did not contravene a statute. There, police witnesses were immune from an action under 42 U.S.C. § 1983 for giving allegedly perjured testimony that resulted in a criminal conviction. The holding rests in part on the fact that § 1983 contains no specific provision of a cause of action for perjured police testimony. The Court took this to mean that Congress intended that common law defenses, including witness immunity, applied. Briscoe, 460 U.S. at 330, 103 S.Ct. 1108. Our state legislature, by contrast, has made "specific provisions to the contrary." The Health Care Information Act expressly creates a cause of action for unauthorized disclosures of health care information, even in judicial proceedings. RCW 70.02.060.
¶ 29 Absolute immunity is a "blunt instrument" to be wielded solely in defense of a compelling public interest. Deatherage, 134 Wash.2d at 136, 948 P.2d 828; Twelker v. Shannon & Wilson, Inc., 88 Wash.2d 473, 478, 564 P.2d 1131 (1977). The public policy justification here is less than compelling compared to the competing interest of protecting confidential disclosures made during medical treatment. Consultations with confidential advisors should not require a warning that anything disclosed will be available to potential future litigation adversaries and may be used against the client in court. See, e.g., Loudon v. Mhyre, 110 Wash.2d 675, 677, 756 P.2d 138 (1988); Rowe v. Vaagen Bros. Lumber, Inc., 100 Wash.App. 268, 279, 996 P.2d 1103 (2000).
¶ 30 Mr. Wynn based several statutory and common law claims on Ms. Earin's conduct in the custody proceedings, all of which were at least facially meritorious. The provisions of RCW 70.02.060 must be followed before disclosing information to litigation adversaries; and Ms. Earin's own expert testified that standard professional practice placed limits on testimony.
¶ 31 The court erred in concluding that witness immunity applied.

SUBPOENA VIOLATION CLAIMS
¶ 32 Mr. Wynn served Ms. Earin with a subpoena duces tecum requiring her to bring his counseling records to a deposition 24 days later. Ms. Earin first filed a declaration that the records were unavailable, then said they had been stolen. She never did produce the records. Mr. Wynn claimed this violated RCW 70.02.080, which requires a health care provider to turn over records within 15 days of a patient's written request.
¶ 33 The court dismissed this claim. The court reasoned that RCW 70.02.080 was not violated because it was never invoked. The court then ruled that the third party provisions of RCW 70.02.060 did not apply to patient requests. Mr. Wynn appeals the latter ruling.
¶ 34 Whether RCW 70.02.060 applies to these facts is a conclusion of law that we review de novo. Keyes v. Bollinger, 31 Wash.App. 286, 289, 640 P.2d 1077 (1982).
¶ 35 RCW 70.02.080 (Request from Patient). The court correctly denied Mr. Wynn relief under this section of the statute. He passed this over in favor of compulsory process. Mr. Wynn could simply have written to Ms. Earin requesting his records, then obtained a court order under RCW 70.02.080 and RCW 70.02.170 if she did not comply within 15 days. He did not do this. Instead, he served Ms. Earin with a subpoena under the superior court civil rules demanding production in 24 days. The civil rules, then, not RCW 70.02.080 provide his remedy.
¶ 36 RCW 70.02.060 (Request from Third Party). RCW 70.02.060 simply has no application to these facts. RCW 70.02.080 *243 covers patients seeking their own records. RCW 70.02.060 does not. This section authorizes providers to deliver medical records to third parties who comply with its provisions. The primary requirement is that the third party must obtain compulsory process and give notice to the patient or counsel in time for them to seek a protective order from the court. RCW 70.02.060(1). Otherwise, the provider must not turn over the records. RCW 70.02.060(2). The court correctly dismissed these claims.

JUDGE VERSUS JURY DETERMINATION OF STATUTORY DAMAGES
¶ 37 Contrary to Mr. Wynn's contention, the court submitted the damages question to the jury. Contrary to Ms. Earin's contention, this was correct. The Health Care Information Act remedies section provides:
Civil Remedies. (1) A person who has complied with this chapter may maintain an action for the relief provided in this section against a health care provider or facility who has not complied with this chapter.
(2) The court may order the health care provider or other person to comply with this chapter. Such relief may include actual damages, but shall not include consequential or incidental damages. The court shall award reasonable attorneys' fees and all other expenses reasonably incurred to the prevailing party.
RCW 70.02.170 (emphasis added).
¶ 38 The issue here is whether the "relief provided in this section" means in section.170 in its entirety or just in subsection (2). Ms. Earin maintains that "such relief" in subsection (2) means the court order that immediately precedes it. That is, an order of compliance issued by the court may include actual damages and attorney fees.
¶ 39 Mr. Wynn contends that "such relief" in subsection (2) refers to the "relief provided in this section" referred to in subsection (1). We agree. An aggrieved patient may or may not seek an order of compliance but may seek damages and fees.
¶ 40 The interpretation of a statute is a question of law, subject to de novo review. Restaurant Dev., Inc. v. Cananwill, Inc., 150 Wash.2d 674, 681, 80 P.3d 598 (2003). Our review always begins with the plain language of the statute. Id. at 682, 80 P.3d 598. If the language lends itself to more than one interpretation, we apply accepted principles of statutory interpretation to try to determine the intended meaning. Id.
¶ 41 Here, RCW 70.02.170 is the remedies section of the Health Care Information Act. The remedies section has two subsections. Subsection (1) says a person who claims a violation "may maintain an action for the relief provided in this section." Subsection (2) authorizes the court to order compliance. It then says that "[s]uch relief may include actual damages." RCW 70.02.170(2).
¶ 42 We conclude that, if the legislature had intended to limit the availability of damages to plaintiffs who seek injunctive relief, it would have said so. The use of the same word  relief  in both subsections suggests that the legislature intended the second  "such relief"  to refer back to the first  "the relief provided." If the legislature had meant that only the injunctive relief obtainable in subsection (2) may include damages, subsection (1) would say an aggrieved patient may seek "the relief provided in subsection (2)." Instead, it says "the relief provided in this section." The section can only be section RCW 70.02.170, including subsections (1) and (2).
¶ 43 We interpret RCW 70.02.170(2) as providing that the judge may provide equitable relief in the form of an injunctive order to comply. And the court shall award the prevailing party's reasonable attorney fees and expenses. But the relief for which an aggrieved person may file an action includes actual damages.
¶ 44 This is consistent with the constitutional right to a jury on the issue of damages. CONST. art. I, § 21; CR 38.[4] A plaintiff's *244 right to the relief warranted by the facts alleged and proved is not subject to legislation. If the claim requires determination of a purely legal right, "`the court, as it always has done, may call a jury to try out that question.'" Durrah v. Wright, 115 Wash. App. 634, 642, 63 P.3d 184 (quoting Brown v. Baldwin, 46 Wash. 106, 114, 89 P. 483 (1907)), review denied, 150 Wash.2d 1004, 77 P.3d 650 (2003).
¶ 45 We conclude, then, that Mr. Wynn had a right under this statute to submit the question of "actual damages" proximately resulting from violations of this Act to the jury. "`"Actual damages" are synonymous with compensatory damages.'" Martini v. Boeing Co., 137 Wash.2d 357, 367, 971 P.2d 45 (1999) (quoting BLACK'S LAW DICTIONARY 35 (6th ed.1990)); Blaney v. Int'l Ass'n of Machinists & Aerospace Workers Dist. No. 160, 114 Wash.App. 80, 95, 55 P.3d 1208 (2002). They are limited to "compensation for actual injuries or loss." BLACK'S LAW DICTIONARY 35. But actual damages includes compensation for mental anguish from a tort involving an affront to personal dignity. Anderson v. Pantages Theater Co., 114 Wash. 24, 31, 194 P. 813 (1921).

STATUTORILY RECOVERABLE ATTORNEY FEES
¶ 46 The jury found that a single statutory claim was a proximate cause of Mr. Wynn's damages  Ms. Earin's leaving his records in her unlocked car. The court decided this as a question of law and directed a verdict. The judge segregated this single statutory violation to award fees. The court estimated that Mr. Wynn could have conducted discovery of the facts and obtained a judicial determination of the law with 10 percent of the lawyering billed for. Of the over $130,000 in attorney fees and litigation costs Mr. Wynn requested, the court awarded $11,900 fees and $1,100 costs.
¶ 47 Mr. Wynn contends his statutory claims and proof of negligence are inextricably intertwined. Therefore, he is entitled to all the fees requested. He argues that his claims are a sort of private attorney general action that furthers important public policy goals. Therefore, the statute should be liberally construed to make him whole. And, he continues, this requires fees and costs, not only for successful statutory claims, but also for related common law claims and other statutory claims, both successful and unsuccessful.
¶ 48 Ms. Earin responds that statutory fee shifting provisions should be narrowly construed to discourage frivolous claims. Withholding fees for pointless duplication and failed claims as the court did here, Ms. Earin contends, is consistent with this legislative intent. Scott Fetzer Co. v. Weeks, 122 Wash.2d 141, 151, 859 P.2d 1210 (1993). Moreover, Washington courts have rejected theories based on private attorney actions. So, Ms. Earin argues, Mr. Wynn was entitled only to fees for those statutory claims he prevailed on.
¶ 49 We review the legal basis for attorney fees de novo. Schlener v. Allstate Ins. Co., 121 Wash.App. 384, 388, 88 P.3d 993 (2004). We review the amount of the award for abuse of discretion. Ermine v. City of Spokane, 143 Wash.2d 636, 641, 23 P.3d 492 (2001). The amount of damages involved is not a compelling factor in fixing the amount of fees. Travis v. Wash. Horse Breeders Ass'n, Inc., 111 Wash.2d 396, 409, 759 P.2d 418 (1988).
¶ 50 Statutory attorney fees are recoverable strictly for those services "`related to the causes of action which allow for fees.'" Id. at 410, 759 P.2d 418 (quoting Boeing Co. v. Sierracin Corp., 108 Wash.2d 38, 66, 738 P.2d 665 (1987)). Fees should cover the legal effort necessary to recover for the actual violations. Nordstrom, Inc. v. Tampourlos, 107 Wash.2d 735, 744, 733 P.2d 208 (1987) (Consumer Protection Act, RCW 19.86.090); Sierracin Corp., 108 Wash.2d at 66, 738 P.2d 665 (unfair trade practices). An action in tort does not allow for recovery of attorney fees. Norris v. Church & Co., 115 Wash.App. 511, 517, 63 P.3d 153 (2002). But the court may award fees to the prevailing party when authorized to do so by contract, statute, or a recognized ground in equity. Labriola v. Pollard Group, Inc., 152 Wash.2d 828, 839, 100 P.3d 791 (2004).
¶ 51 Mr. Wynn is entitled to "attorneys' fees and all other expenses reasonably incurred" *245 in the prosecution of his statutory claims. RCW 70.02.170(2). But he is not entitled to attorney fees and costs incurred in the prosecution of his common law negligence claim. See, e.g., State v. Costich, 152 Wash.2d 463, 470, 98 P.3d 795 (2004). Here, the court segregated Mr. Wynn's negligence claims from his statutory claims. It then awarded fees solely for establishing the facts and the law for the single statutory violation the jury awarded damages for. We review, then, both the legal and factual bases for the court's fee award.
¶ 52 The statutory and common law negligence claims can be segregated. Establishing a statutory violation did not require evidence of negligence. And proof of negligence may include proof that a statute was violated, but that certainly was superfluous here because duty and breach could have been established without reference to the statute. And breach of a statutory duty is not furthered by proving it was also negligent.
¶ 53 The statutory and common law claims are inextricably intertwined, however, on the issues of proximate cause and damages. Mr. Wynn alleged a course of conduct comprising a series of breaches  some statutory, some common law, some both  that caused a single injury. He was entitled to argue to the jury that the ultimate emotional distress was proximately caused by a series of acts and conditions. See, e.g., Caughell v. Group Health Coop. of Puget Sound, 124 Wash.2d 217, 233-34, 876 P.2d 898 (1994). Therefore, unless there is some principled way to sort out what caused what, the statute entitles Mr. Wynn to attorney fees for establishing the entire series of events that form the basis of his alleged damages.

ATTORNEY FEES ON APPEAL
¶ 54 Mr. Wynn is entitled to fees as the prevailing party under RAP 18.1 and RCW 70.02.170.

HOLDING
¶ 55 We reverse the superior court's ruling that common law witness immunity insulates Ms. Earin's testimony during the custody proceeding from liability either for violations of the Health Care Information Act or for breaches of professional standards of care.
¶ 56 We conclude that the court correctly dismissed Mr. Wynn's claims that Ms. Earin's misrepresentations to the court in response to the subpoena violated either RCW 70.02.080 or RCW 70.02.060.
¶ 57 We hold that the question of "actual damages" and their proximate relationship to violations of the Health Care Information Act is one for the jury, not the court.
¶ 58 We affirm the court's rulings that the disclosure to the guardian ad litem violated the statute and that the loss of records from the car violated both the statute and the standard of care.
¶ 59 Mr. Wynn is entitled to resolution of the surviving claims. See, e.g., Korslund v. DynCorp Tri-Cities Servs., Inc., 121 Wash. App. 295, 335-36, 88 P.3d 966 (2004), review granted, 153 Wash.2d 1008, 106 P.3d 762 (2005). The question of attorney fees and costs is remanded consistent with this opinion, for determination contingent on a jury's damage award upon retrial.
WE CONCUR: BROWN, J., and BAKER, J., Pro Tem.
NOTES
[1] CR 45(f): "Contempt. Failure by any person without adequate excuse to obey a subpoena served upon him [or her] may be deemed a contempt of the court from which the subpoena issued."
[2] Upon receipt of a written request from a patient to examine or copy his or her recorded health care information, a health care provider must, within 15 working days, provide the information or inform the patient that the information does not exist or cannot be found. RCW 70.02.080(1)(a), (b).
[3] See, e.g., Report of Proceedings at 1086.
[4] "The right of trial by jury as declared by article I, section 21 of the constitution or as given by a statute shall be preserved to the parties inviolate." CR 38(a).