M. Susan CHURCHILL, Plaintiff-Respondent,

v.

WFA ECONOMETRICS CORPORATION and Wendy
Drefahl, Defendants-Appellants,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Intervenor. [Case No. 02–0348.]

M. Susan CHURCHILL, Plaintiff-Respondent,

v.

WFA ECONOMETRICS CORPORATION and Wendy
Drefahl, Defendants-Appellants,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Intervenor-Respondent. [Case No. 02–0523.]

Court of Appeals

*Nos. 02–0348, 02–0523. Submitted on briefs October 1, 2002.—
Decided November 12, 2002.*

2002 WI App 305

(Also reported in 655 N.W.2d 505.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Wayne M. Yankala* of

*Mingo & Yankala*, Milwaukee and *Thomas J. Lonzo* of *Cook & Franke S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert B. Corris* of *Robert B. Corris, S.C.*, Milwaukee.

On behalf of the intervenor-respondent, the cause was submitted on the brief of *Terry J. Booth* of *Piper & Schmidt*, Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. WEDEMEYER, P.J. WFA Econometrics Corporation and Wendy Drefahl appeal from a judgment entered after a jury found in favor of M. Susan Churchill in a defamation action (case No. 02–0348). In a separate appeal (case No. 02–0523), WFA and Drefahl appeal from a decision and a judgment declaring that there was no insurance coverage for the defamation claim under a policy issued to WFA by American Family Mutual Insurance Company. Because of the interrelated issues, we consolidate these two appeals.[1]

¶ 2. WFA and Drefahl claim that: (1) the alleged defamatory statements were privileged as a matter of law; and (2) on the insurance issue, there was insufficient evidence to support the verdict in that there were no damages. Because the absolute privilege applicable to statements made in the course of a judicial proceeding applies, we reverse the judgment in case No. 02–0348. Based on our decision, there is no need to

---

[1] This court may consolidate separate appeals on its own motion. *See* WIS. STAT. RULE 809.10(3) (1999–2000).

address insurance coverage issues in companion case No. 02–0523 and, therefore, that appeal is dismissed.[2]

## I. BACKGROUND

¶ 3.   This case finds its genesis in an underlying divorce proceeding, *In re the Marriage of Sandra Freyermuth v. James Freyermuth*, (Kenosha County Circuit Court Case No. 97–FA-000233). In that case, Attorney Katherine Lingle represented Sandra Freyermuth and Attorney Thomas O'Brien represented James Freyermuth. As a part of the proceedings, Lingle hired Churchill to prepare a qualified domestic relations order (QDRO), which was pertinent to the issue involving the division of pension proceeds. Churchill prepared the QDRO and forwarded it to Lingle. Lingle forwarded it to O'Brien for his review. O'Brien hired Drefahl of WFA to review the QDRO and offer comments on it.

¶ 4.   Drefahl responded to O'Brien's request by letter dated March 30, 1999. There were three specific comments in the letter, which Churchill alleged to be defamatory: (1) "An experienced and knowledgeable

---

[2] In case No. 02–0348, WFA and Drefahl raise six additional issues: (1) whether the evidence was insufficient; (2) whether the compensatory damage award of $500 should be declared a nominal damage award; (3) whether the trial court should have changed the punitive damage ·award to zero; (4) whether the verdict was defective; (5) whether the trial court erroneously exercised its discretion in allowing testimony regarding dissemination of the alleged defamatory remarks; and (6) whether the trial court erred in changing the jury's award of "court costs and attorney's fees" to the dollar amount of $38,264.23. Because we reverse the judgment based on the absolute privilege, there is no need to address these additional issues. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need to be addressed).

QDRO drafter would know this."; (2) "Paragraph 5 is yet another area that demonstrates Attorney Churchill's lack of knowledge and expertise in drafting QDROs."; and (3) "As we have seen in many other QDROs drafted by Attorney Churchill over the years, this one falls short of the requirements of a comprehensive, logical, and legal document." O'Brien forwarded this letter to Lingle so that necessary adjustments could be made to the QDRO. Lingle shared the letter with Churchill.

¶ 5.   As a result of the three statements referenced above, Churchill filed this action against WFA and Drefahl. WFA and Drefahl answered Churchill's complaint by asserting that the statements were expressions of opinion, that they were substantially true, and that the defendants were entitled to a conditional or absolute privilege because the statements were made in the course of a judicial proceeding.

¶ 6.   WFA and Drefahl moved for summary judgment on the basis that an absolute privilege applied to the statements. They argued that because the statements were made in the course of a judicial proceeding and because they were relevant to the proceeding, the defamation claim should be dismissed. The trial court concluded that the absolute privilege asserted by WFA and Drefahl did not exist under Wisconsin law.

¶ 7.   The case proceeded to trial in October 2001. In a 10–2 verdict, the jury found in favor of Churchill and awarded damages in the sum of $500. The trial court denied the defendants' post-verdict motions, and judgment was entered. The trial court also ruled that the American Family Insurance policy did not provide coverage to WFA or Drefahl for any of the claims alleged in the underlying lawsuit. WFA and Drefahl now appeal.

## II. DISCUSSION

¶ 8.    The dispositive issue in this case is whether the statements Drefahl made in her March 30, 2001 letter are protected by the absolute privilege. Whether the absolute privilege applies is a question of law that we review independently. *Rady v. Lutz*, 150 Wis. 2d 643, 647, 444 N.W.2d 58 (Ct. App. 1989). We conclude that the absolute privilege applies to the statements made by Drefahl.

¶ 9.    Judicial proceedings are protected by an absolute privilege. *Id.* at 647–48. The absolute privilege rule was established to provide litigants with the freedom to access the courts, "to preserve and defend their rights and to protect attorneys during the course of their representation of clients." *Id.* at 648. The rule is not limited to protecting attorneys, but also extends to witnesses and experts who are involved in the judicial proceedings. *See Bromund v. Holt*, 24 Wis. 2d 336, 341–42, 129 N.W.2d 149 (1964).

¶ 10.    In order for the privilege to apply, the statements must satisfy two requirements: (1) the statement "must be made in a procedural context that is recognized as affording absolute privilege"; and (2) the statement "must be relevant to the matter under consideration." *Rady*, 150 Wis. 2d at 648. Thus, we must determine whether the statements made by Drefahl satisfy these two requirements.

¶ 11.    The trial court in this case failed to address these factors. It overlooked the precedential case law altogether. It erroneously stated that no absolute privi-

lege exists in this state. Instead, it concluded that the qualified privilege involved here was the work-product privilege. It ruled that the statements were not protected by the qualified privilege because Drefahl admitted that she was retained by O'Brien as a consultant and potential witness. The trial court incorrectly reasoned that if Drefahl had agreed only to a consultation and clearly stated that she did not want to be a witness or testify during the proceeding, her statements would not have been actionable in a defamation case. In other words, the trial court concluded that the further a witness distanced herself or himself from the potential of actually having to testify in a case, the greater probability that a privilege would apply. The trial court was mistaken because the opposite is true.

¶ 12. As noted, the correct analysis under the circumstances in this case is to apply the two-part absolute privilege test set forth in *Rady*: "It must be made in a procedural context that is recognized as affording absolute privilege, and it must be relevant to the matter under consideration." *Id.* at 648. The first part indicates that for the absolute privilege to apply, the statements must be made in a procedural context that is recognized as affording the absolute privilege. *Id.* We conclude that the statements made by Drefahl satisfy this requirement. The undisputed facts demonstrate that Drefahl was retained by O'Brien to review the QDRO drafted by opposing counsel's consultant. O'Brien advised Drefahl that the divorce case ended with a devastating result for his client and that he wanted to make sure that the QDRO did not create any further problems. O'Brien asked Drefahl to be exceptionally careful in reviewing the terms of the QDRO to prevent any further "significant hardship" for his client. Drefahl responded by criticizing several parts of the

933

QDRO that may create ambiguity, which could have further hurt O'Brien's client. Drefahl knew that she may have to testify with respect to her opinions relative to the QDRO.

¶ 13. The challenged statements were made within the context of an expert's letter, which advised a litigant's attorney on a matter in dispute. Based on all of these facts, we conclude that the statements were made in a proper procedural context sufficient to satisfy the first requirement. They were made during the pendency of a divorce proceeding in response to an attorney's request. The statements were offered in an attempt to assist the attorney in protecting his client from further hardship and prior to the time that the court had approved the QDRO. This situation falls squarely within the procedural context that is covered by the absolute privilege afforded to statements made during the course of a judicial proceeding.

■■■■

¶ 14. The second requirement before the absolute privilege cloaks the proffered statements is that the statements must be relevant to the matter. *Id.* at 649–50. In determining relevance in this context, however, it is important to note that the statements should be liberally construed, and any doubt as to relevance should be resolved in favor of finding the statement privileged. *Id.* at 650. The purpose behind the liberal relevance rule is to alleviate fear that litigants have "that by some mistake as to facts or some excess of zeal, or by some error . . . they may be subjected to . . . litigation . . . [or] may well feel that justice is too dearly bought and that it is safest to abandon [the] pursuit . . . ." *Snow v. Koeppl*, 159 Wis. 2d 77, 81, 464 N.W.2d 215 (Ct. App. 1990) (citation omitted).

¶ 15. Here, the alleged defamatory statements were not "plainly irrelevant." *See Rady*, 150 Wis. 2d at 649. They all addressed the competence of an opposing expert. Although they may have been indelicate and may have exceeded what was necessary to provide a professional opinion, they still are relevant to the matter, and therefore protected by the absolute privilege.

¶ 16. The first challenged statement was the comment that "any qualified drafter would know this." This statement reflected Drefahl's view that because the QDRO prepared by Churchill had included both a coverture fraction and an exact dollar amount, it resulted in inconsistencies and ambiguity. Thus, this statement was relevant to Drefahl's opinion of the competency of the individual who drafted the QDRO. The second and third challenged statements also were directed to the competence of the drafter of the QDRO. Under the liberal relevance standard, we cannot conclude that the statements are "plainly irrelevant." *Id.*

¶ 17. Accordingly, we conclude that the allegedly defamatory statements made by Drefahl in her letter are absolutely privileged because each was made in the course of a judicial proceeding and relevant to that proceeding. This is a clear case of absolute privilege—it involves material prepared for litigation directed to the lawyer and disseminated to the parties and persons whose roles were material to the litigation. Therefore, we reverse the judgment in the underlying defamation case, and dismiss the appeal in the companion insurance coverage case. Dismissal of the latter is appropriate based on our ruling that the statements are entitled to an absolute privilege. Because no liability can arise

from the statements, determining whether or not insurance coverage exists is no longer necessary.

*By the Court.*—Judgment reversed; judgment dismissed.