# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| VALVE CORPORATION, | No. 86585-4-I |
| Respondent, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| BUCHER LAW PLLC and AFN LAW, PLLC, and JOHN DOE CORPORATION, | |
| Appellants. | |

FELDMAN, J. — It has long been recognized "that lawyers are officers of the court who perform a fundamental role in the administration of justice." *Spevack v. Klein*, 385 U.S. 511, 524, 87 S. Ct. 625, 17 L. Ed. 2d 574 (1967). The litigation privilege recognizes this fundamental role by affording attorneys immunity from civil liability for communications that "have some relation to" a judicial proceeding or a party to the proceeding. *Deatherage v. Examining Bd. of Psychology*, 134 Wn.2d 131, 135, 948 P.2d 828 (1997) (citing Restatement (Second) of Torts § 588 (AM. LAW INST. 1977)). The Uniform Public Expression Protection Act, chapter 4.105 RCW (UPEPA), augments this protection by providing "an expedited process for dismissing lawsuits that target activities protected by the First Amendment, such as freedom of speech, press, assembly, petition, and

association on matters of public concern." *M.G. v. Bainbridge Island Sch. Dist. #303*, __ Wn. 3d ___, 566 P.3d 132, 144 (2025).

Contrary to these bedrock legal principles, Valve Corporation asserted tortious interference and abuse of process claims against Bucher Law PLLC and AFN Law PLLC (the Bucher Defendants) arising out of communications and related conduct in the course of the law firms' representation of thousands of Valve customers who allege that its anticompetitive practices have raised prices for computer games on its "Steam" platform and kept them at artificially high prices. Because the litigation privilege indisputably protects the Bucher Defendants' conduct, Valve's claims fail as a matter of law and the trial court erred in denying the Bucher Defendants' motion to dismiss the claims under UPEPA. Accordingly, we reverse and remand for entry of an order dismissing Valve's claims against the Bucher Defendants with prejudice.

I

Valve operates an online service known as "Steam." Steam is a platform through which video game developers sell and distribute games and Steam users may purchase, download, and play those games.

Steam users agree to the Steam Subscriber Agreement (SSA), which includes dispute resolution provisions. Addressing that issue, the SSA states, "If Valve is unable to resolve your concerns and a dispute remains between you and Valve . . . YOU AND VALVE AGREE TO RESOLVE ALL DISPUTES AND CLAIMS BETWEEN US IN INDIVIDUAL BINDING ARBITRATION." The SSA continues:

> Try to Resolve Dispute Informally First . . . You and Valve agree to
> make reasonable, good faith efforts to informally resolve any dispute

before initiating arbitration. A party who intends to seek arbitration must first send the other a written notice that describes the nature and basis of the claim or dispute and sets forth the relief sought. If you and Valve do not reach an agreement to resolve that claim or dispute within thirty (30) calendar days after the notice is received, you or Valve may commence an arbitration. Written notice to Valve must be sent via postal mail . . . .

Thus, if a Steam user has a concern, claim, or dispute that the parties are unable to resolve informally within thirty days, the user may commence an arbitration. The SSA further states:

If you seek $10,000 or less, Valve agrees to promptly reimburse your filing fee and your share if any of AAA's arbitration costs, including arbitrator compensation, unless the arbitrator determines your claims are frivolous or were filed for harassment. Valve agrees not to seek its attorneys' fees or costs unless the arbitrator determines your claims are frivolous or were filed for harassment.

Critical here, the SSA prohibits Steam users from bringing or participating in a class, collective, or representative arbitration and mandates "individual binding arbitration only."

The Bucher Defendants represent thousands of individual Steam users seeking resolution in arbitration of disputes relating to Valve's alleged anticompetitive practices under federal antitrust and state consumer protection laws. In accordance with the SSA, the Bucher Defendants initiated the dispute resolution process by sending a letter on behalf of their clients relating to Valve's alleged anticompetitive practices and proposing settlement terms pursuant to the informal dispute resolution process.

Valve responded that the notice lacked important customer identifying information, was not particularized to individual customers, and "was not sent in good faith." The Bucher Defendants replied by sending Valve individual e-mails

on behalf of each of their clients following Valve's request for individual complaints. After the parties failed to resolve their disputes within the thirty-day window established in the SSA, the Bucher Defendants filed their clients' claims individually in arbitration.

Following the initiation of the individual arbitration claims, Valve filed tortious interference and abuse of process claims alleging that the Bucher Defendants had attempted to "weaponize the terms of Valve's dispute resolution agreement with Steam users to line their own pockets" and that the Bucher Defendants "have abused the legal process and interfered with Valve's relationships with its customers." The Bucher Defendants then filed a dispositive motion, seeking dismissal under UPEPA, CR 12, and CR 56.

The trial court denied the Bucher Defendants' motion, holding (a) Valve has alleged sufficient facts to establish plausible claims for tortious interference and abuse of process, (b) the Bucher Defendants had failed to establish the litigation privilege precluded Valve's claims, and (c) "a statutory exception to UPEPA" applied to the Bucher Defendants' actions. Lastly, the court denied Valve's request for an award of attorney fees and costs under RCW 4.105.090 because the Bucher Defendants had not filed their UPEPA motion with intent to delay the proceeding and there was "at least some justification" for filing the motion. This timely appeal followed.

II

A

Preliminarily, Valve argues the trial court's UPEPA order is not appealable as of right. We disagree.

RAP 2.2(a) limits appeals as of right to specified categories "[u]nless otherwise . . . provided by statute . . . ." Here, UPEPA provides that a "moving party may appeal as a matter of right from an order denying" a UPEPA motion. RCW 4.105.080. Our Supreme Court recently confirmed, "A moving party may appeal as a matter of right from an order denying a motion under RCW 4.105.020." *Thurman v. Cowles Co.*, 4 Wn. 3d 291, 299, 562 P.3d 777 (2025). Based on these legal authorities, we reject Valve's argument that the trial court's UPEPA order is not appealable as of right.[1]

B

Turning to the merits of the appeal, the Bucher Defendants argue the trial court erred in denying their UPEPA motion. We agree.

As noted previously, the Washington legislature enacted UPEPA "to provide an expedited process for dismissing lawsuits that target activities protected by the First Amendment, such as freedom of speech, press, assembly, petition, and association on matters of public concern." *M.G.*, 566 P.3d at 145. UPEPA is an "anti-SLAPP" law, where SLAPP refers to a "strategic lawsuit against public participation." *Jha v. Khan*, 24 Wn. App. 2d 377, 386, 520 P.3d 470 (2022). Such

---

[1] Because we do not reach the Bucher Defendants' alternative grounds for dismissal under CR 12 and CR 56 (*see* section II.B.3 below), we need not determine whether the trial court's rulings as to those issues are also appealable at this time.

proceedings are sometimes described as lawsuits "that masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them for doing so." *Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 923 (9th Cir. 2022) (quoting *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013)).

Under UPEPA, a defendant "may file a special motion for expedited relief to dismiss the cause of action" within 60 days of being served with a complaint. RCW 4.105.020(2). In ruling on such a motion, "the court shall dismiss with prejudice a cause of action" if three requirements are met: (1) the defendant "establishes under RCW 4.105.010(2) that [UPEPA] applies"; (2) the plaintiff "fails to establish under RCW 4.105.010(3) that [UPEPA] does not apply"; and (3) the plaintiff "fails to establish a prima facie case as to each essential element of the cause of action" or "failed to state a cause of action upon which relief can be granted" or "[t]here is no genuine issue as to any material fact and the [defendant] is entitled to judgment as a matter of law." RCW 4.105.060(1). We review the denial of a UPEPA motion to dismiss de novo. *Jha*, 24 Wn. App. 2d at 387.

1

Regarding the first requirement to grant dismissal under UPEPA, RCW 4.105.010(2) states in relevant part as follows:

> [T]his chapter applies to a cause of action asserted in a civil action against a person based on the person's:
>
> (a) Communication in a legislative, executive, judicial, administrative, or other governmental proceeding;

(b) Communication on an issue under consideration or review in a legislative, executive, judicial, administrative, or other governmental proceeding;

(c) Exercise of the right of freedom of speech or of the press, the right to assemble or petition, or the right of association, guaranteed by the United States Constitution or Washington state Constitution, on a matter of public concern.

The Bucher Defendants argue UPEPA applies here under subsections (b) and (c). Both arguments are persuasive.[2]

Starting with subsection (b), the Bucher Defendants' communications and corresponding conduct at issue here pertain to "an issue under consideration or review in a . . . judicial . . . proceeding." RCW 4.105.010(2)(b). In *Wolfire Games, LLC v. Valve Corp.*, No. C21-0563-JCC, 2021 WL 4952220, at *1 (W.D. Wash. Oct. 25, 2021), the plaintiffs alleged that Valve "utilizes anticompetitive practices and its monopoly powers to inflate prices on games sold and distributed through [its] Steam Store and Steam Gaming Platform." The court granted Valve's motion to compel arbitration of the claims asserted by Steam users and denied its motion to stay the claims asserted by a software developer, holding the SSA required arbitration of the former and there was no proper basis to stay the latter. *Id.* at *3. Citing *Wolfire*, Valve alleges in its complaint that the Bucher Defendants seek to "'copycat' a legal theory developed by another law firm in another lawsuit that had already been sent to arbitration." Thus, as alleged by Valve, the Bucher Defendants' communications pertain to an issue under consideration in a judicial proceeding as required by RCW 4.105.010(2)(b).

---

[2] The trial court did not expressly address the applicability of UPEPA under RCW 4.105.010(2), ruling instead that Valve had established that UPEPA does not apply based on RCW 4.105.010(3)(a)(ii), which we discuss in section II.B.2 below.

Regarding subsection (c), the Bucher Defendants' representation of their clients is protected by the guarantee of freedom of speech, association, and petition under the United States Constitution. The "'right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association and petition.'" *Mothershed v. Justices of Supreme Court,* 410 F.3d 602, 611 (9th Cir. 2005) (quoting *Denius v. Dunlap,* 209 F.3d 944, 953 (7th Cir. 2000)). Courts in other states have likewise applied First Amendment protections to attorneys representing clients in bringing suit.[3]

Much the same is true with regard to the Washington State Constitution. Washington's right of access to the courts is grounded in article I, section 10, which states, "Justice in all cases shall be administered openly, and without unnecessary delay." In *Putman v. Wenatchee Valley Medical Center, P.S.*, 166 Wn.2d 974, 216 P.3d 374 (2009), our Supreme Court declared, "The people have a right of access to courts; indeed, it is the bedrock foundation upon which rest all the people's rights and obligations." *Id.* at 978 (internal quotation marks omitted). Our courts have "generally applied the open courts clause [of article I, section 10] [in the context of] . . . the right to a remedy for a wrong suffered." *King v. King*, 162 Wn.2d 378, 388, 174 P.3d 659 (2007) (internal quotation marks omitted). Thus, in representing their clients, the Bucher Defendants were exercising their constitutional rights under the

---

[3] *See Schimmel v. McGregor*, 438 S.W.3d 847, 858 (Tex. App. 2014) (recognizing attorney right to petition on behalf of clients and also attorney right to freedom of speech on behalf of clients in applying Texas anti-SLAPP law); *Thornton v. Breland*, 441 So. 2d 1348, 1350 (Miss. 1983) ("We regard the lawyer's right and responsibility of zealous advocacy on behalf of his client among the most precious forms of speech.").

Washington State Constitution, in addition to the United States Constitution, as RCW 4.105.010(2)(c) requires.

RCW 4.105.010(2)(c) also requires that the protected conduct relate to "a matter of public concern." Whether speech is on a matter of public concern is a question of law, which courts determine "'by the content, form, and context of a given statement, as revealed by the whole record.'" *Jha*, 24 Wn. App. 2d at 389 (quoting *Billings v. Town of Steilacoom*, 2 Wn. App. 2d 1, 31, 408 P.3d 1123 (2017)). "Speech involves 'matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Spratt v. Toft*, 180 Wn. App. 620, 632, 324 P.3d 707 (2014) (internal quotation marks omitted) (quoting *Snyder v. Phelps*, 562 U.S. 443, 453, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011)).

Here, the Bucher Defendants' statements and conduct representing their clients' interests are on matters of public concern. The arbitration claims at issue were based on alleged violations of federal antitrust and state consumer protection laws. Antitrust and consumer protection actions are matters of public concern: "the purpose of [Washington's Consumer Protection Act] is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition." RCW 19.86.920. Not all conduct by an attorney is protected; the "petitioning activity must actually give rise to and be the basis for the asserted liability." *Dillon v. Seattle Deposition Reporters, LLC*, 179 Wn. App. 41, 82, 316 P.3d 1119 (2014). But the Bucher Defendants' conduct here in

9

representing their clients *is* the basis of Valve's assertion of liability. Thus, the Bucher Defendants have established, as a matter of law, that UPEPA applies to their communications and associated conduct under both RCW 4.105.010(2)(b) and (c).

2

Addressing the second requirement to grant dismissal under UPEPA, the trial court ruled in relevant part as follows:

> The Court finds a statutory exception to UPEPA in this matter, as the plain language of RCW 4.105.010(3)(a)(iii) does not apply the statute to a claim brought "against a person . . . selling . . . services if the cause of action arises out of a communication related to the person's sale . . . of the . . . . services." Such is the context of the [Bucher] Defendants' actions addressed by this suit.

Applying de novo review (as indicated above), we conclude that the trial court misapplied RCW 4.105.010(3)(a)(iii) and reached an erroneous holding.

"Rules of statutory construction provide that a statute which is clear on its face is not subject to judicial interpretation." *Marquis v. City of Spokane*, 130 Wn.2d 97, 107, 922 P.2d 43 (1996). "Statutory construction begins by reading the text of the statute or statues involved. If the language is unambiguous, a reviewing court is to rely solely on the statutory language." *State v. Roggenkamp*, 153 Wn.2d 614, 621, 106 P.3d 196 (2005). Issues of statutory interpretation are reviewed de novo. *Pub. Util. Dist. No. 2 of Pac. County v. Comcast of Wash. IV, Inc.*, 8 Wn. App. 2d 418, 449, 438 P.3d 1212 (2019).

Here, the statutory provision at issue is unambiguous. Under RCW 4.105.010(3)(a)(iii), UPEPA does not apply to causes of action against a person selling services "if the cause of action arises out of a communication related to the

*person's sale . . . of the . . . services*." (Emphasis added.) Valve's tortious interference and abuse of process claims against the Bucher Defendants do not arise out of communications related to the Bucher Defendants' sale of their legal services. They instead arise out of the Bucher Defendants' communications with Valve initiating arbitration proceedings, which communications and related conduct are included within—not excluded from—the scope of UPEPA.

Valve argues a Texas court's interpretation of that state's anti-SLAPP statute is persuasive, but the holding in that case is based on easily distinguishable facts. In *Kostura v. Judge*, 627 S.W.3d 380, 383-84 (Tex. App. 2021), an attorney asserted tort claims against a law firm that previously employed him. The attorney alleged defamation, invasion of privacy, and intentional infliction of emotional distress because the firm sent a letter to numerous clients who had worked with the attorney informing them that the attorney was no longer able to practice law and thus the clients should seek new counsel. *Id*.

The firm responded by filing a motion to dismiss the claims under the Texas Citizens Participation Act (TCPA), an anti-SLAPP statute. The Texas court held the firm's communication to clients "ar[ose] out of the sale" of legal services between the clients and the firm regarding the firm's provision of such services. *Id.* at 388. It was thus subject to an exception to the TCPA which states that the Act does not apply to "a legal action brought against a person primarily engaged in the business of selling [ ] services, if the *statement or conduct arises out of the sale [ ] of . . . services, [ ] or a commercial transaction in which the intended audience is an actual or potential buyer or customer*." *Id.* (emphasis added).

*Kostura* is inapposite because the statements at issue there arose from communications related to the law firm's ability to continue to sell legal services to its clients and were thus subject to the foregoing exception to the TCPA. Here, in contrast, the Bucher Defendants' statements were sent to their clients' *adversary*, not to their clients or potential clients, and addressed an ongoing legal dispute with that adversary. Instead of centering on the commercial relationship between a law firm and its clients, as in *Kostura*, the Bucher Defendants' communications were acts of legal representation. Because RCW 4.105.010(3)(a)(iii) does not apply here, Valve has "fail[ed] to establish under RCW 4.105.010(3) that [UPEPA] does not apply," RCW 4.105.060(1)(b), and the second requirement for dismissal under UPEPA is satisfied.

3

Lastly, as to the third requirement to grant dismissal under UPEPA, the Bucher Defendants principally argue Valve "failed to state a cause of action upon which relief can be granted" under RCW 4.105.060(1)(c)(ii)(A). That is so, they argue, for two reasons: first, their conduct is protected as a matter of law by the litigation privilege; and second, Valve has not pleaded—and cannot properly plead—various elements of its claims, such as a viable duty of non-interference, as required to state a cause of action for tortious interference,[4] and initiating legal proceedings to "accomplish an end" outside of those proceedings, as required to

---

[4] *See, e.g., Pleas v. City of Seattle*, 112 Wn.2d 794, 804, 774 P.2d 1158 (1989) (quoting *Straube v. Larson*, 287 Or. 357, 361, 600 P.2d 371 (1979); *Libera v. City of Port Angeles*, 178 Wn. App. 669, 676-77, 316 P.3d 1064 (2013).

state a cause of action for abuse of process.[5] We agree with the first argument and therefore do not reach the second. Nor do we reach the Bucher Defendants' other asserted grounds for dismissal under UPEPA, CR 12, and CR 56.

RCW 4.105.060(1)(c)(ii)(A), applicable here, imports CR 12's requirement for judgment on the pleadings. A motion to dismiss on such grounds, whether asserted under CR 12(b)(6) or CR 12(c), is properly granted "where the plaintiff cannot prove any set of facts consistent with the complaint that would entitle the plaintiff to relief." *Jackson v. Quality Loan Serv. Corp.*, 186 Wn. App. 838, 843, 347 P.3d 487 (2015). "The plaintiff's allegations and any reasonable inferences are accepted as true." *Gorman v. City of Woodinville*, 160 Wn. App. 759, 762, 249 P.3d 1040 (2011). However, the complaint's legal conclusions are not required to be accepted as true. *Jackson*, 186 Wn. App. at 843 (quoting *Gorman v. Garlock*, 155 Wn.2d 198, 215, 118 P.3d 311 (2005)). If a plaintiff's claim is legally insufficient even under the proffered hypothetical facts, dismissal is appropriate. *Id*. at 843-44.

Turning to the merits of the Bucher Defendants' immunity argument, the litigation privilege is a judicially created privilege that protects participants, including attorneys, against civil liability for statements they make in the course of judicial proceedings. *McNeal v. Allen*, 95 Wn.2d 265, 267, 621 P.2d 1285 (1980). "[A]ttorneys and law firms have absolute immunity from liability for acts arising out of representing their clients." *Jeckle v. Crotty*, 120 Wn. App. 374, 386, 85 P.3d

---

[5] *See, e.g., Sea-Pac Co., Inc. v. United Food & Commercial Workers Local Union 44*, 103 Wn.2d 800, 806-07, 699 P.2d 217 (1985) (citing *Batten v. Abrams*, 28 Wn. App. 737, 748, 626 P.2d 984 (1981)).

931 (2004). Attorney conduct is "absolutely privileged" when it is "pertinent or material to the redress or relief sought, whether or not the statements are legally sufficient to obtain that relief." *McNeal*, 95 Wn.2d at 267.

Extending the privilege to attorneys "is based upon a public policy of securing to them as officers of the court the utmost freedom in their efforts to secure justice for their clients." *Id*. As this court recently explained, the litigation privilege "protects participants from retaliatory, derivative lawsuits—regardless of the merit of those suits—instead relying on checks by the trial court such as sanctions to address false testimony." *Young v. Rayan*, 27 Wn. App. 2d 500, 503, 533 P.3d 123 (2023). The privilege "recogniz[es] that our legal system depends on reducing the threat that every statement or argument may lead to further litigation." *Id.*

While stated broadly, the litigation privilege is "limited to situations in which authorities have the power to discipline as well as strike from the record statements which exceed the bounds of permissible conduct." *Twelker v. Shannon & Wilson, Inc.*, 88 Wn.2d 473, 476, 564 P.2d 1131 (1977). In this way, the "potential harms of a broad application of litigation privilege . . . are blunted by forms of accountability" such as sanctions and "professional disciplinary proceedings, which may occur based on . . . behavior during litigation and which are therefore an additional avenue to confront harm caused by privileged statements." *Young*, 27 Wn. App. 2d at 510 (citing *Wynn v. Earin*, 163 Wn.2d 361, 378, 181 P.3d 806 (2008)). The privilege has been applied to a variety of claims against attorneys representing their clients, including tortious interference claims. *See, e.g., Young*,

27 Wn. App. 2d at 515-25 (applying privilege to defamation, false light, and civil conspiracy claims); *Jeckle*, 120 Wn. App. at 386 (applying privilege to tortious interference with a business relationship claim, among others).

Here, the Bucher Defendants' conduct was both "pertinent" and "material" to the relief they sought for their clients, and thus insulated from suit by the litigation privilege. The Bucher Defendants agreed to represent clients individually in arbitration pursuant to Valve's SSA and contacted Valve in accordance with its prescribed dispute resolution process. When Valve indicated it required individualized notices for each customer complaint, the Bucher Defendants complied. The conduct Valve complains of—the filing of thousands of individual arbitration requests—is a direct result of its own agreement barring class actions and prohibiting collective or representative arbitration.[6] Such conduct is part of a legal practice and is directly related to representing clients, which is precisely the kind of conduct the litigation privilege is designed to protect.

Valve claims, and the trial court agreed, the litigation privilege does not apply here because its scope is "limited to situations where some power to discipline remains available." *Deatherage v. Examining Bd. of Psychology*, 134 Wn.2d 131, 136, 948 P.2d 828 (1997). Although Valve "does not dispute . . . that litigation privilege could extend, when appropriate, to lawyers appearing in arbitration proceedings," it does not identify any persuasive reason that the arbitrators of these individual claims would be unable to discipline the Bucher Defendants for any alleged improper conduct. In addition, professional

---

[6] On this particular issue, Valve is hoist by its own contractual petard. Notably, Valve no longer requires individual arbitration in its SSA.

15

responsibility disciplinary avenues are available to Valve to address its concerns. Valve instead claims that because the arbitration demands of the Bucher Defendants' clients are asserted individually, *as its own SSA requires*, no single arbitrator is "well situated" to remedy the alleged harm caused by the Bucher Defendants' actions. Contrary to Valve's contention, "some power to discipline" impermissible conduct is "available" through the individual arbitrations it demanded, which is sufficient to show the "availab[ility]" of "some" power to discipline, even though it is not the remedy Valve prefers. *Deatherage,* 134 Wn. 2d at 136.

Lastly, Valve argues the litigation privilege does not apply here based on *Mason v. Mason*, 19 Wn. App. 2d 803, 835, 497 P.3d 431 (2021), which declined to apply the privilege to an abuse of process claim. In *Mason*, an attorney was alleged to have pursued a parenting plan modification for a client to intentionally place the other parent's immigration status at risk. *Id*. This conduct supported an abuse of process claim, as the attorney "intentionally employed legal process for an inappropriate and extrinsic end." *Id.* Here, unlike in *Mason*, Valve has not alleged the Bucher Defendants have an ultimate end that is unrelated to the legal relief they are pursuing for their clients by following the terms of Valve's SSA. While Valve alleges that the Bucher Defendants will benefit financially from such relief, that is only because, as Valve's complaint confirms, the Bucher Defendants "keep[] 40 percent of any amount recovered from Valve, plus reimbursement for any upfront fees and costs." Thus, the Bucher Defendants' interests are aligned

16

with, and subsidiary to, their clients' interests in recovering damages in the arbitration proceedings.  On this record, *Mason* is inapposite.

III

In sum, all three requirements for dismissal of Valve's tortious interference and abuse of process claims under UPEPA are satisfied here:  the Bucher Defendants have established that UPEPA applies to Valve's claims; Valve has failed to establish an exception to UPEPA's applicability; and Valve has "failed to state a cause of action upon which relief can be granted."  RCW 4.105.060(1)(c)(ii)(A).  Because the trial court erred in denying the Bucher Defendants' UPEPA motion, we reverse the trial court's ruling and remand for entry of an order dismissing Valve's claims against the Bucher Defendants with prejudice in accordance with RCW 4.105.060(1)(ii)(A).[7]

Feldman, J.

WE CONCUR:

Díaz, J.

Chung, J.

---

[7] While UPEPA requires an award of prevailing party attorney fees, *see* RCW 4.105.090(1), the Bucher Defendants specifically state they are "not appealing [the] denial of fees" by the trial court. The Bucher Defendants also do not seek attorney fees on appeal.  And with regard to attorney fees on remand, the Bucher Defendants state that they "preserve all rights to seek fees under UPEPA and otherwise on remand *if further litigation is required*," (emphasis added), but as no further litigation is required here, that issue is resolved as well.